

**'08 CIV 5543**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION | : | MDL NO. 1789 and MDL NO. 1760 |
| IN RE: AREDIA/ ZOMETA PRODUCT LIABILITY LITIGATION | : : | |

-------------------------------------------------

This Document Relates to:                   :

CHESTER R. MILLER                          :

    Plaintiff,                                :

                          Case no.

vs.

                         Jury Trial Demanded

MERCK & CO., INC., and
NOVARTIS PHARMACEUTICALS
CORPORATION

    Defendant.

## COMPLAINT

Plaintiff, Chester R. Miller, by and through his undersigned attorneys sue Defendant, Merck & Co., Inc., and Defendant, Novartis Pharmaceuticals Corporation alleging as follows:

## I. PARTIES

1.     Plaintiff, Chester R. Miller, is a resident of Big River, California. Plaintiff used the prescription drug FOSAMAX from approximately January 2001 until February 2001. Plaintiff also used the prescription drugs AREDIA and ZOMETA from early 2001 until late 2002.

2.     Defendant, Merck & Co. Inc., (hereinafter "Merck") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place

of business in New Jersey. Merck's principal office is located at One Merck Drive, Whitehouse Station, New Jersey.

3.      Merck does business throughout the United States and at all relevant times was authorized to conduct business in the State of California and Merck has regularly transacted business in California and throughout the United States.

4.      At all relevant times Merck, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis, osteopenia, and Paget's Disease.

5.      Merck, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold or distributed FOSAMAX in California and throughout the United States.

6.      Merck derives substantial revenue from pharmaceutical products used or consumed in California and throughout the United States.

7.      Merck expected, or should have expected, that its business activities could or would have consequences within every state in which its product was distributed.

8.      Merck placed FOSAMAX into the stream of worldwide commerce and interstate commerce in the United States. It did so without adequate testing and with no warning that the drug carried with it a risk of causing osteonecrosis of the jaw.

9.      Merck, either, directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other uses.

10.    As a result of the defective nature of FOSAMAX, Plaintiff was diagnosed with osteonecrosis of the jaw.

11.    Merck concealed and continues to conceal its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff Chester R. Miller, other consumers, and the medical community.

12.    Merck failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

13.    As a result of Merck's actions and inaction, Plaintiff Chester R. Miller was injured due to his ingestion of FOSAMAX, which has caused and will continue to cause Plaintiff various injuries and damages. Plaintiff accordingly seeks compensatory and punitive damages.

14.    Defendant, Novartis Pharmaceuticals Corporation (hereinafter "Novartis"), is a corporation of the state of Delaware, with its principal place of business in New Jersey. At all relevant times herein, Novartis was in the business of promoting, manufacturing and distributing ZOMETA and AREDIA.

15.    Novartis does business throughout the United States and at all relevant times hereto, marketed, promoted, warranted and sold ZOMETA and AREDIA in California and throughout the United States.

16.    Plaintiff, Chester R. Miller, was prescribed ZOMETA and AREDIA from early 2001 until late 2002 as a post-cancer treatment of bone loss and osteoporosis. Plaintiff received monthly injections of ZOMETA and AREDIA as recommended by his physician.

17. After using ZOMETA and AREDIA, Plaintiff was diagnosed with osteonecrosis of the jaw.

18. Novartis was at all relevant times authorized to conduct business in the State of California. Defendant, Novartis has regularly transacted business in California and throughout the United States.

19. At all relevant times Novartis, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of ZOMETA and AREDIA, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

20. Novartis, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold or distributed ZOMETA and AREDIA in the State of California and throughout the United States.

21. Novartis derives substantial revenue from pharmaceutical products used or consumed in the State of California and throughout the United States.

22. Novartis expected, or should have expected, that its business activities could or would have consequences within every state where its products were distributed.

23. Novartis placed ZOMETA and AREDIA into the stream of worldwide commerce and interstate commerce in the United States. It did so without adequate testing and with no warning that the drug carried with it a risk of causing osteonecrosis of the jaw.

24. Novartis, either, directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold ZOMETA and AREDIA for the treatment of osteoporosis.

25.    As a result of the defective nature of ZOMETA and AREDIA, persons who were prescribed and ingested ZOMETA and AREDIA, including Plaintiff, Chester R. Miller, have suffered and may continue to suffer severe and permanent personal injuries, including osteonecrosis of the jaw.

26.    Novartis concealed and continues to conceal its knowledge of ZOMETA's and AREDIA's unreasonably dangerous risks from Plaintiff, Chester R. Miller, other consumers, and the medical community.

27.    Novartis failed to conduct adequate and sufficient post-marketing surveillance of ZOMETA and AREDIA after it began marketing, advertising, distributing, and selling the drug.

28.    As a result of Novartis's actions and inaction, Plaintiff, Chester R. Miller, was injured due to his ingestion of ZOMETA and AREDIA, which has caused and will continue to cause Plaintiff various injuries and damages. Plaintiff accordingly seeks compensatory and punitive damages.

## II. JURISDICTION AND VENUE

29.    This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity exists between Plaintiff and Defendants.

30.    The amount in controversy, exclusive of interest and costs, exceeds $75,000.

31.    Venue is proper within this district and division pursuant to 28 U.S.C. §§ 1391, as both Defendants conduct substantial business in this district.

## III. FACTUAL BACKGROUND

32.     At all relevant times Defendant, Merck was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

33.     At all relevant times Defendant, Novartis, was responsible for, or involved in, designing, manufacturing marketing, advertising, distributing, and selling ZOMETA and AREDIA.

34.     FOSAMAX, AREDIA and ZOMETA fall within a class of drugs known as bisphosphonates.

35.     There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: zoledronic acid (ZOMETA); pamidronate Disodium (AREDIA); ibandronate (Bondronat); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid).  Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for FOSAMAX confirms that the molecule contains a nitrogen atom.

36.     Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates.  Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and typically is not reversible.

37.     Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

38.    On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (AREDIA), zoledronic acid (ZOMETA), risedronate (ACTONEL), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

39.    As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to all bisphosphonates.

40.    Defendants knew of the significant risk of dental and oral complications caused by the ingestion of FOSAMAX, AREDIA and ZOMETA but did not adequately and sufficiently warn consumers, including Plaintiff Chester R. Miller, or the medical community, of such risks.

41.    As a direct result, Plaintiff, Chester R. Miller, was prescribed FOSAMAX, AREDIA and ZOMETA and has been permanently and severely injured, having suffered serious consequences from the ingestion and will require ongoing medical care and treatment.

42.    As a direct and proximate result of using FOSAMAX, AREDIA and ZOMETA, Plaintiff suffered severe osteonecrosis of the jaw.

43.    Plaintiff, as a direct and proximate result of using FOSAMAX, AREDIA and ZOMETA, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

44.    Plaintiff used the drugs which had been provided to him in a condition that was substantially the same as the condition in which it was manufactured and sold.

45.    Plaintiff would not have used the drugs had Defendants properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of said condition and been able to mitigate the effects.

46.    Defendants through its affirmative misrepresentations and omissions actively concealed from Plaintiff and his physicians the true and significant risks associated with said drugs. The running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

47.    As a result of Defendants' actions, Plaintiff and his prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendants acts, omissions, and misrepresentations.

48.    Plaintiff alleges that the actions and omissions of the Defendants' as set forth herein combined and concurred to cause the injuries described, specifically, severe osteonecrosis of the jaw.

## IV. COUNTS

### COUNT I: NEGLIGENCE

49.    Plaintiff restates the allegations set forth above as if fully set forth herein.

50.    Defendants owed Plaintiff, Chester R. Miller and other consumers, a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX, AREDIA and ZOMETA.

51.    Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

a.     failing to properly and thoroughly test FOSAMAX, AREDIA and ZOMETA before releasing the drugs to market;

b.     failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of FOSAMAX, AREDIA and ZOMETA;

c.     failing to conduct sufficient post-marketing testing and surveillance of FOSAMAX, AREDIA and ZOMETA;

d.     designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX, AREDIA and ZOMETA to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of their use and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drugs;

e.     failing to exercise due care when advertising and promoting said drugs; and

f.     negligently continuing to manufacture, market, advertise, and distribute FOSAMAX, AREDIA and ZOMETA after Defendants knew or should have known of their adverse effects.

52.    As a direct and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff Chester R. Miller sustained osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a

diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

53.    Defendants' conduct as described above was committed with knowing, conscious, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

54.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendants, Merck and Novartis, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT II: STRICT LIABILITY

55.    Plaintiff restates the allegations set forth above as if fully set forth herein.

56.    Defendants manufactured, sold, distributed, marketed, and/or supplied FOSAMAX, AREDIA and ZOMETA respectively, in a defective and unreasonably dangerous condition to consumers, including Plaintiff Chester R. Miller.

57.    Defendants designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, AREDIA and ZOMETA, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by Defendants.

58.    Plaintiff used FOSAMAX, AREDIA AND ZOMETA as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendants.

59.    FOSAMAX, AREDIA and ZOMETA failed to perform safely when used by ordinary consumers, including Plaintiff, including when they were used as intended and in a reasonably foreseeable manner.

60.    FOSAMAX, AREDIA and ZOMETA were defective in its design and were unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

61.    FOSAMAX, AREDIA and ZOMETA were defective in design or formulation in that they posed a greater likelihood of injury than other similar medications and were more dangerous than an ordinary consumer could reasonably foresee or anticipate.

62.    FOSAMAX, AREDIA and ZOMETA were defective in its design and were unreasonably dangerous in that they neither bore nor were packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

63.    Although Defendants knew or should have known of the defective nature of their drugs, they continued to design, manufacture, market, and sell FOSAMAX, AREDIA and ZOMETA so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX, AREDIA and ZOMETA.

64.    Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's, AREDIA's or ZOMETA's defects or perceived the dangers

posed by the drug.

65.    As a direct and proximate consequence of Defendants' conduct, Plaintiff Chester R. Miller sustained osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

66.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

67.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendants, Merck and Novartis, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT III: BREACH OF EXPRESS WARANTY

68.    Plaintiff restates the allegations set forth above as if fully set forth herein.

69.    Defendants expressly represented to Plaintiff Chester R. Miller and other

consumers and the medical community that FOSAMAX, AREDIA and ZOMETA were safe and fit for their intended purposes, that they were of merchantable quality, that they did not produce any dangerous side effects, and that they were adequately tested.

70.    FOSAMAX does not conform to Defendant, Merck's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries. ZOMETA and AREDIA does not conform to Defendant, Novartis' express representations because they are not safe, have numerous and serious side effects, and causes severe and permanent injuries.

71.    At all relevant times the drugs did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

72.    Plaintiff, Chester R. Miller, other consumers, and the medical community relied upon Defendants' express warranties.

73.    As a direct and proximate result of Defendants' actions, Plaintiff Chester R. Miller sustained osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

74.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

75.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendants, Merck and Novartis, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT IV: BREACH OF IMPLIED WARRANTY

76.    Plaintiff restates the allegations set forth above as if fully set forth herein.

77.    Defendant, Merck manufactured, distributed, advertised, promoted, and sold FOSAMAX.  Defendant, Novartis manufactured, distributed, advertised, promoted, and sold ZOMETA and AREDIA.

78.    At all relevant times, Defendant, Merck knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.  At all relevant times, Defendant, Novartis knew of the use for which ZOMETA and AREDIA was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

79.    Defendants were aware that consumers, including Plaintiff Chester R. Miller, would use their drugs for treatment of osteoporosis and for other purposes.

80.    Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck and Novartis to sell their drugs only if they were indeed of

merchantable quality and safe and fit for their intended use.

81.    Defendants breached their implied warranty to consumers, including Plaintiff; FOSAMAX, AREDIA and ZOMETA were not of merchantable quality or safe and fit for their intended use.

82.    Consumers, including Plaintiff and the medical community, reasonably relied upon Defendants' implied warranty for FOSAMAX, AREDIA and ZOMETA.

83.    The drugs reached consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

84.    As a direct and proximate result of Defendants' action, Plaintiff Chester R. Miller sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services.  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

85.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

86.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and

damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendants, Merck and Novartis, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

### COUNT V: FRAUDULENT MISREPRESENTATION-MERCK

87.     Plaintiff restates the allegations set forth above as if fully set forth herein.

88.     Defendant, Merck, made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a.     Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of osteoporosis; and

b.     Defendant represented that FOSAMAX was safer than other alternative medications.

89.     Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

90.     The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

91.     Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

92.    Plaintiffs doctors and others relied upon the representations.

93.    Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

94.    As a direct and proximate result, Plaintiff, Chester R. Miller, sustained osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

95.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

96.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant, Merck for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT VI:  FRAUDULENT MISREPRESENTATION-NOVARTIS

97.     Plaintiff restates the allegations set forth above as if fully set forth herein.

98.     Defendant, Novartis made fraudulent misrepresentations with respect to ZOMETA and AREDIA in the following particulars:

a.      Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that ZOMETA and AREDIA had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b.      Defendant represented that ZOMETA and AREDIA was safer than other alternative medications.

99.     Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of ZOMETA and AREDIA to consumers, including Plaintiff, and the medical community.

100.    The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

101.    Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of ZOMETA and AREDIA.

102.    Plaintiffs doctors and others relied upon the representations.

103.    Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers,

including Plaintiff.

104.    As a direct and proximate result, Plaintiff Chester R. Miller sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services.  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiffs direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

105.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

106.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant Novartis, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT VII: FRAUDULENT CONCEALMENT-MERCK

107.    Plaintiff restates the allegations set forth above as if fully set forth herein.

108.    Defendant, Merck fraudulently concealed information with respect to FOSAMAX in the following particulars:

a.       Defendant, Merck represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b.       Defendant, Merck represented that FOSAMAX was safer than other alternative medications and fraudulently concealed information which demonstrated that FOSAMAX was not safer than alternatives available on the market.

109.    Defendant, Merck had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

110.    The concealment of information by Defendant, Merck about the risks of FOSAMAX was intentional, and the representations made by Defendant, Merck were known by Defendant, Merck to be false.

111.    The concealment of information and the misrepresentations about FOSAMAX were made by Defendant, Merck with the intent that doctors and patients, including Plaintiff, rely upon them.

112.    Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Defendant, Merck concealed from Plaintiffs doctors and Plaintiff.

113.    As a direct and proximate result of Defendant, Merck's fraudulent concealment and misrepresentation, Plaintiff Chester R. Miller suffered osteonecrosis of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the

enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has incurred expense for medical care and treatment due to the injuries caused by FOSAMAX.

114.    Defendant, Merck's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

115.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant Merck, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT VIII: FRAUDULENT CONCEALMENT-NOVARTIS

116.    Plaintiff restates the allegations set forth above as if fully set forth herein.

117.    Defendant, Novartis fraudulently concealed information with respect to ZOMETA and AREDIA in the following particulars:

a.    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that ZOMETA and AREDIA was safe and fraudulently withheld and concealed information about the substantial risks of using ZOMETA and AREDIA; and

b.    Defendant represented that ZOMETA and AREDIA was safer than other alternative medications and fraudulently concealed information which demonstrated that ZOMETA and AREDIA were not safer than alternatives available on the market.

118.    Defendant had sole access to material facts concerning the dangers and unreasonable risks of ZOMETA and AREDIA.

119.    The concealment of information by Defendant about the risks of ZOMETA and AREDIA was intentional, and the representations made by Defendant were known by Defendant to be false.

120.    The concealment of information and the misrepresentations about ZOMETA and AREDIA were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

121.    Plaintiff's doctors and others relied upon the representations and were unaware of the substantial dental and oral risks of ZOMETA and AREDIA which Defendant concealed from Plaintiffs doctors and Plaintiff.

122.    As a direct and proximate result of Defendant's fraudulent concealment and misrepresentation, Plaintiff, Chester R. Miller, suffered osteonecrosis of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury.  Plaintiff has incurred expense for medical care and treatment due to the injuries caused by ZOMETA and AREDIA.

123.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

124.    As a direct and proximate result of the combining and concurring actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant Novartis, for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## IX.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

DATED this _____18th_____ day of June, 2008.

Annesley H. DeGaris
ASB-9182-A63A
Attorney for Plaintiff
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama  35205
Telephone:  (205) 328-2200
Facsimile:  (205) 324-7896
E-Mail:adegaris@cwcd.com;
mhammond@cwcd.com

And

**Of Counsel:**
Robert G. Germany
Pittman, Germany, Roberts & Welsh, LLP
410 S. President Street
Jackson, MS 39201
Telephone: (601) 948-6200
Facsimile: (601) 948-6187
Email: rgg@pgrwlaw.com

PLAINTIFF DEMANDS A TRIAL OF ALL ISSUES BY STRUCK JURY.

_____
Annesley H. DeGaris
Attorney for the Plaintiff

**PLAINTIFF'S ADDRESS**

c/o CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, AL 35205

AND

c/o Pittman, Germany, Roberts & Welsh, LLP
410 S. President Street
Jackson, MS 39201